UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONGPING CAO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-04688-RFL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 38 |

      In this securities fraud putative class action, Plaintiffs allege that Uber Technologies, as well as its executive officers Dara Khosrowshahi and Nelson Chai (collectively, "Defendants"), violated §§ 10(b) and 20(a) of the Securities and Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Defendants' motion to dismiss is granted with leave to amend. This order assumes the reader's familiarity with the factual allegations, the relevant law, and the parties' arguments.

      With respect to the Section 10(b) and Rule 10b-5 claims, Plaintiffs fail to adequately allege falsity as to any of the challenged statements.[1] First, Plaintiffs challenge the Sarbanes-Oxley ("SOX") certifications attached to Uber's quarterly and annual reports covering 2019 and 2020. These SOX certifications state that Defendants have disclosed "[a]ny fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting." (Am. Compl. ¶¶ 36, 38, 40, 42, 46.)

---

[1] Because falsity is a necessary element of a claim under § 10(b) and Rule 10b-5, the Court need not address whether Plaintiffs have sufficiently alleged scienter, loss causation, or reliance. *See Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1096, 1100 (9th Cir. 2022).

1

Plaintiffs argue that this statement was materially false and misleading because it failed to disclose that Travis Kalanick, Uber's former CEO who was ousted in 2017, allegedly ordered the use of a kill switch in 2015. (*See* Am. Compl. ¶¶ 4, 25, 37, 48 at 18.) However, the SOX certifications' present-tense statement "neither stated nor implied anything" about the conduct of a former CEO that occurred years before the time period covered by the reports. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *see also Ulbricht v. Ternium S.A.*, No. 18CV6801, 2020 WL 5517313, at *11 (E.D.N.Y. Sept. 14, 2020) (falsity of SOX certifications not sufficiently alleged where "the alleged fraud occurred years before the period covered by the filing and did not involve [defendant company's] management," and explaining that "[t]he present-tense nature of the SOX certifications—'any fraud that *involves* management'—only reinforces the temporal limits of the certification at issue" (citation omitted)). Plaintiffs do not allege that Kalanick "had a significant role in Uber's internal control over financial reporting" in 2019 or 2020, but only that he had such a role when he was "CEO in 2016 and 2017." (Am. Compl. ¶¶ 37, 39, 41, 43, 47.) The fact that the reports referred to historical financial data, the accuracy of which Plaintiffs do not contest, does not alter the time period covered by the reports or the "the temporal limits of the certification." *See Ulbricht*, 2020 WL 5517313, at *11; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44–45 (2011) (companies must disclose information "only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading,'" and "can control what they have to disclose . . . by controlling what they say to the market" (quoting 17 C.F.R. § 240.10b-5(b))).

Second, Plaintiffs fail to sufficiently plead falsity as to Khosrowshahi's response to a question at an annual general meeting on May 11, 2020. That question, which asked Khosrowshahi about Uber's "plans to adapt to the new world reality subsequent to the public health crisis and the ensuing financial economic and societal crisis," recognized that "Uber chose Amsterdam to base its international operations, in large part for a highly advantageous corporate taxation arrangement." (Am. Compl. ¶ 44.) In response, Khosrowshahi stated that "we have our

Amsterdam office for many factors" that "is more than tax," and that Uber "consistently look[ed]" at "factors" including "corporate taxation structures, local presence, et cetera." (Am. Compl. ¶ 44.) According to Plaintiffs, Khosrowshahi's response was materially false and misleading because it failed to disclose that Uber purportedly headquartered its European operations in Amsterdam to use the Netherlands as a tax shelter. (Am. Compl. ¶ 45.) However, the question itself presumed that Uber located in Amsterdam partly for tax advantages, which Khosrowshahi acknowledged. *See In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 948 (9th Cir. 2023) ("If the market has already become aware of the allegedly concealed information, the allegedly false information or material omission would already be reflected in the stock's price and the market will not be misled." (cleaned up)). Considered in context, Khosrowshahi's statement thus did not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody*, 280 F.3d at 1006.

Plaintiffs also contend that Khosrowshahi's response failed to disclose that Uber maintained its Amsterdam office because Dutch authorities allegedly helped Uber evade taxes and did not take action for its use of the kill switch in 2015. (*See* Am. Compl. ¶¶ 45, 48 at 18; Opp. at 16.) "[S]ection 10(b)[] and Rule 10b-5 do not create an affirmative duty to disclose any and all material information," instead prohibiting "only misleading and untrue statements, not statements that are incomplete." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012); *see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) ("We have expressly declined to require a rule of completeness for securities disclosures because no matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." (cleaned up)). At most, Plaintiffs have alleged that Khosrowshahi did not provide "a more fulsome report." *Intuitive Surgical*, 759 F.3d at 1061. There are no factual allegations stating a plausible basis to conclude that Uber did not, in fact, "have [its] Amsterdam office for many factors," which included tax reasons. (Am. Compl. ¶ 44.) Nor do Plaintiffs plausibly plead that Khosrowshahi's response "trigger[ed] a duty to disclose additional" reasons why Uber maintained its Amsterdam

office.  *Macomb*, 39 F.4th at 1100; *cf. In re Rigel*, 697 F.3d at 880 n.8 ("[A]s long as the omissions do not make the actual statements misleading, a company is not required to disclose every safety-related result from a clinical trial, even if the company discloses some safety-related results and even if investors would consider the omitted information significant.").

The dismissal is with leave to amend, as the Court cannot say at this juncture that amendment would be futile.

Because Plaintiffs have not adequately alleged a primary violation of § 10(b) or Rule 10b-5, their control person claims under § 20(a) necessarily fail.  *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1113 (9th Cir. 2021).

\*   \*   \*

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED WITH LEAVE TO AMEND**.  If Plaintiffs choose to file a second amended complaint, they must do so by **June 13, 2024**.  Failure to meet this deadline or failure to cure the deficiencies identified in this order will result in dismissal with prejudice of Plaintiffs' claims.  Defendants' response to the second amended complaint is due **twenty-one days** from the date of Plaintiffs' filing.

**IT IS SO ORDERED.**

Dated: May 14, 2024

                                              RITA F. LIN
                                              United States District Judge